(No. 32480.—

HARRISON STRICKLIN, Appellee, *vs.* FRANK ANNUNZIO, Director of Labor, *et al.,* Appellants.

*Opinion filed November 20, 1952.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellants Frank Annunzio *et al.;* Essington, McKibbin, Beebe & Pratt, of Chicago, and Feirich & Feirich, of Carbondale, for appellant Peabody Coal Company.

Charles C. Murrah, of Herrin, for appellee.

Mr. Justice Fulton delivered the opinion of the court:

This is an appeal from the circuit court of Williamson County which reversed an order of the Board of Review of the Department of Labor of the State of Illinois, which found that the plaintiff, Harrison Stricklin, did not qualify for unemployment compensation benefits under the statute.

Harrison Stricklin, the plaintiff, sought to obtain unemployment compensation for the period from August 15, 1950, to March 12, 1951, a period of seven months.

The record discloses that the plaintiff originally filed a claim with the Illinois Division of Unemployment Compensation on May 31, 1950. When interviewed by a deputy in June of that year he stated that he had made no applications for work, and during the same month he applied for his retirement pension from the United Mine Workers of America, which he has been receiving since that time. The deputy determined on August 16, 1950, that plaintiff was ineligible for benefits from May 31, 1950, to August 15, 1950, on the basis that plaintiff had withdrawn from the labor market and was unavailable for and unable to work. The plaintiff then appealed to the referee who affirmed the deputy's determination and plaintiff then appealed to the

Board of Review. In February of 1951, the Board of Review affirmed the decision of the referee and no further appeal was taken by plaintiff at that time and the decision of the Board of Review became final.

The plaintiff filed for benefits for unemployment compensation beginning with the week ending August 21, 1950. Again the deputy made an investigation concerning plaintiff's eligibility for unemployment compensation and again, on December 13, 1950, the deputy determined he was ineligible for benefits. The deputy based his decision on the grounds that claimant was unavailable for work since he failed to show that he was actively seeking work for which he was qualified by prior training and experience or for which he is physically qualified within the meaning of the act. At that time it was disclosed that the plaintiff had applied for work with his last employing unit in April of 1950, and again in October of 1950, and that during the time he was applying for compensation he had applied to five employers, few of which employed any employees. It was also discovered at that time that the plaintiff retired as a coal miner on June 27, 1949, for the reason that his physician found that he had a severe coronary thrombosis and he was prevented from any but light indoor work, with avoidance of heavy exertion and hard physical exertion.

December 13, 1950, plaintiff took an appeal to the referee, which was followed by an amended appeal when the deputy found that the determination of December 13, 1950, denying the plaintiff unemployment compensation, applied to the period up to and including March 12, 1951. The evidence taken before the referee showed that the plaintiff was 62 years old, voluntarily quit his job in the coal mines on the advice of his physician because of a heart attack, and that he had applied for and was receiving the $100 a month pension from the United Mine Workers retirement fund which is given to members of the union who have worked 20 years or more in a mine and who

have retired from the bituminous coal industry. The referee affirmed the determination of the deputy that plaintiff was ineligible for benefits. Plaintiff then appealed to the Board of Review, which filed a written decision affirming the referee. The plaintiff then filed suit in the circuit court of Williamson County under the Administrative Review Act to reverse the decision of the Board of Review. March 27, 1952, the circuit court entered a judgment finding that the decision of the Board of Review was contrary to the manifest weight of the evidence and reversed and set aside its finding and remanded the case to the board with instructions and directions to compute and pay plaintiff the amount of unemployment compensation owing and due him.

Paragraph C of section 500 of the Unemployment Compensation Act (Ill. Rev. Stat. 1951, chap. 48, par. 420,) provides that an unemployed individual shall be eligible to receive benefits if the director finds that he is able to work, and is available for work; provided that during the period in question he was actively seeking work.

The question involved in this cause is not one of first impression before this court. In *Mohler* v. *Department of Labor,* 409 Ill. 79, we discussed at some length the cases from other jurisdictions defining what constitutes availability for work. We there determined that there is no hard and fast rule as to what constitutes availability for work. Since that time the further provision has been added to our statute requiring the applicant to actively be seeking work.

The general rule, according to the *Mohler case,* seems to be that the availability requirement of the statute is satisfied where a worker is ready and willing to accept suitable work at a point where there is an available labor market which work he does not have good cause to refuse. The opinion cites *Dwyer* v. *Appeal Board,* 321 Mich. 178, 32 N.W. 2d 434, to the effect that "Whether or not a claimant is in fact available for work depends to a great extent

upon his mental attitude, *i.e.*, whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out." We went on to say that mere registration for service and expressed willingness to accept work does not establish availability for work. The applicant must be able to work and also available for work, and, under the present statute, be actively seeking work.

The court in that case further discussed the duties of the courts reviewing the findings of administrative agencies and pointed out the hard and fast rule in this State that the findings of fact made by such administrative agencies should not be disturbed unless they are manifestly against the weight of the evidence. (*Drezner* v. *Civil Service Com.* 398 Ill. 219.) If the findings of the administrative agency are against the manifest weight of the evidence it is the duty of the court to review the proceedings and set them aside. *Brown Shoe Co.* v. *Gordon,* 405 Ill. 384.

There is evidence in this record from which certain presumptions arise which support the findings of the administrative board. The plaintiff applied to coal mines, including the last employer, but he had already actively withdrawn from the coal industry by his acceptance of the retirement pension from the United Mine Workers Retirement Fund, and, also, his doctor had certified him as unfit for work in the mines. Applicant had also applied for work with various businessmen, but these employed few, if any, employees. These establishments had an employment range so small as to make it unlikely that the applicant would receive jobs with them. The applications which he made, whether they afforded reasonable possibilities for work or not, covered a 7 months' period and the board could have been justified in finding that the small number of applica-

tions over so long a period of time did not constitute sufficient effort to fulfill the requirement of the statute that the applicant be actively seeking work and be available for work.

The case of *Fleiszig* v. *Board of Review*, 412 Ill. 49, cited by appellants, bears many points of resemblance to the instant cause. There, various applicants had applied for work at several establishments over a period of time as in the case before us. In that case, each of the applicants also received a pension or retirement benefit under a plan set up by the labor union and received social security payments from the Federal government. As here, the labor union retirement plan provided that in order to be eligible for its benefits the employee must actually retire and would not be eligible to participate unless he actually did retire.

In the *Fleiszig case* we held that the board was justified in refusing to allow compensation; that the finding that the appellants were not available for work was adequately sustained by the record in that in most cases no attempt to obtain employment was made until after a claim was presented for unemployment benefits and the meagre testimony of the applicants themselves concerning efforts to find work did not show a full and adequate canvass of the labor market. It would seem that that holding is applicable here. The applicant here applied for work at coal mines where he had no hope of obtaining employment. His applications to small business concerns which employed few, if any, employees did not constitute an active search for work. Further, the few applications covered a period of seven months. The applicant here could have shown a far greater interest and industry in finding work had he been sincere in his claims.

The *Fleiszig case* also holds that the acceptance and receipt of retirement benefits clearly evidences an intention to retire from gainful labor and discloses a mental attitude inconsistent with the allegation of attachment to the labor

market. This statement taken in connection with the holding in the *Mohler case* seems to indicate that the mental attitude of the applicant here was not such as to support a finding that he was actively seeking labor and was available for work within the meaning of the statute.

In the instant cause the applicant had accepted retirement benefits from his union, had proclaimed himself to be voluntarily retired from working in mines, had made, under the applicant's theory, twelve applications for work in a period of seven months, and had made no applications for work prior to his first application for unemployment compensation. These exertions do not satisfy the statute. As was said in the *Fleiszig case,* the purposes of the Unemployment Compensation Act will be perverted if its benefits, which are provided at the compulsory expense of others, are paid to persons who are voluntarily idle.

As pointed out in *Brown Shoe Co.* v. *Gordon,* 405 Ill. 384, we do not intend to use this court as a final arbitrator in every dispute on conflicting issues of fact unless they are decided against the manifest weight of the evidence. There is evidence to support the findings of the Board of Review and no evidence to the contrary has been presented to this court. The deputy referee, the referee, and the board all heard the witnesses and determined from the evidence that the applicant was not conducting a *bona fide* search for work at the time the application was made, nor was he available for work under the meaning of the statute. Since there is no evidence upon which we can say that the findings of the agency are clearly and manifestly against the weight of the evidence, the circuit court of Williamson County erred in reversing the decision of the Board of Review. For that reason, the judgment of the circuit court of Williamson County is reversed. 

*Judgment reversed.*