(Nos. 59844, 60039 cons

SANDRA GARLAND, Appellee, v. THE DEPARTMENT OF LABOR *et al.*, Appellants.—PAUL E. SCOTT, Appellee, v. THE DEPARTMENT OF LABOR, Appellant.

*Opinion filed November 30, 1984.*

UNDERWOOD, J., and RYAN, C.J., concurring.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

Irvin L. Masching, of Gomien, Root & Masching, of Dwight, for appellee.

JUSTICE MORAN delivered the opinion of the court:

In these consolidated cases, defendant, the Illinois Department of Labor, Bureau of Employment Security, Division of Unemployment Insurance (Department), appeals from two decisions of the appellate court.

Plaintiff Sandra Garland filed a complaint in the circuit court of Bureau County, seeking judicial review of an administrative decision rendered by the Board of Review (Board) which affirmed the determinations of a claims adjudicator and a referee. The Board held that the plaintiff, as an officer of a closely held family-owned corporation, was able to control the terms of her own employment and, therefore, was presumed not to be an "unemployed individual." Accordingly, she was found to be ineligible for benefits, for the period of November 9, 1980, through August 8, 1981, under the provisions of section 239 of the Illinois Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 349). The circuit court of Bureau County found that there was no evidence that plaintiff had performed any services or received any wages, with the exception of one week, and reversed the decision of the Board as being against the manifest weight of the evidence. The appellate court affirmed the order of the circuit court. (121 Ill. App. 3d 562.) We granted the Department's petition for leave to appeal (87 Ill. 2d R. 315).

Plaintiff Paul E. Scott filed a petition for judicial review of an administrative ruling, in the circuit court of Livingston County. The decision of the Board also determined that plaintiff was not an "unemployed individual" within the meaning of section 239 of the Act. In adopting the findings of fact and the decisions of the claims adjudicator and a referee, the Board found that the plaintiff, as corporate secretary of a closely held family corporation, retained control of his employment "and is

rendering valuable services to the corporation and the continuation of the corporation." As such, he was found to be in continuing full-time service and was denied unemployment insurance benefits for the period of January 3, 1982, through March 13, 1982. The circuit court found that plaintiff had neither received remuneration nor performed any services for the corporation during the relevant period, and it reversed the decision of the Board as being against the manifest weight of the evidence. The appellate court affirmed the order of the circuit court. (123 Ill. App. 3d 187.) We granted the Department's petition for leave to appeal (87 Ill. 2d R. 315) and consolidated these two causes for the purpose of review.

The sole issue before this court is whether the appellate court erred in finding that the plaintiffs, corporate officers of closely held family-owned corporations, were "unemployed individuals" as defined in the Act.

The record reveals that Garland Construction Company is a small, family-owned general construction business. The company was incorporated in 1978. At the time of incorporation, plaintiff Sandra Garland was the secretary-treasurer of the corporation, while her husband, Darwin Garland, was the corporation's president and owner of all of the stock. Plaintiff was an employee of the corporation from the time of incorporation until November 7, 1980. She performed general office tasks and received weekly wages during that period. Contributions were paid by Garland Construction Company to the unemployment insurance fund on her behalf. Following her layoff in November of 1980, plaintiff filed a claim for unemployment insurance benefits, indicating that she was the corporate secretary and owned no stock in the company. A claims adjudicator, based on this information, determined that plaintiff was entitled to the requested weekly benefits.

On May 20, 1981, plaintiff became the president of

the corporation as well as the sole stockholder. In a written statement, submitted by plaintiff, she claimed that the changeover was effected so that the company would receive female minority status. As a result of that status, plaintiff accepted a bid for Garland Construction Company during the week of May 20, 1981. There is no evidence in the record to indicate that plaintiff performed any other services for the corporation during the period in question.

However, on October 8, 1981, a claims adjudicator concluded that plaintiff, due to her status as a corporate officer, was not an "unemployed individual." Rather, she was considered to be in continuing full-time service to the corporation and, therefore, ineligible for the benefits. On appeal, at a hearing before a referee, the plaintiff submitted evidence of substantial efforts on her part to secure employment during her term of unemployment. Nevertheless, the referee affirmed the claims adjudicator's decision and the Board affirmed the referee's decision.

Plaintiff Scott, like Garland, was a corporate officer of a closely held family-owned corporation, engaged in a general contracting business. His testimony at a hearing before a referee indicates that he is the secretary of Scott Brothers Contractors and "believes" that he is a director. Plaintiff Scott has worked as a laborer for the company for 20 years, receiving wages only when he works in that capacity. Plaintiff acknowledged that it was customary for general contractors to have a slack period during the winter. A written statement, submitted by the plaintiff, was read into the record. The statement reveals that Scott Brothers shut down on the first of January, 1982, due to a lack of work. Plaintiff described his status as corporate secretary to be merely an "honorary title" for which he received no remuneration. He also stated that he was a member of a union and was

on their work list but acknowledged that he usually procured his work through Scott Brothers.

As we observed with respect to Garland, there is nothing in the record to indicate that Scott performed any services for his employer or received any wages during the period for which he sought unemployment benefits. Yet, Scott, like Garland, was found to be ineligible for the claimed benefits, because he was a corporate officer during the relevant period. It would appear, therefore, that the Department denied unemployment benefits to the plaintiffs merely because they retained the status of corporate officer during the period of claimed unemployment. The Act, however, contains no exclusionary provision which would deny benefits to an otherwise eligible claimant merely because he is an officer of a corporation. On the contrary, the relevant provisions of the Act indicate that, under the circumstances presented, the plaintiffs were entitled to unemployment benefits.

Under the Act an employer is required to make contributions "with respect to wages payable for employment." (Ill. Rev. Stat. 1981, ch. 48, par. 550.) Wages are defined as "every form of remuneration for personal services, including salaries, commissions, bonuses, and the reasonable money value of all remuneration in any medium other than cash. ***" (Ill. Rev. Stat. 1981, ch. 48, par. 344.) The definition of employment includes "all services performed by an officer of a business corporation, without regard to whether such services are executive, managerial, or manual in nature, and without regard to whether such officer is or is not a stockholder or a member of the board of directors of the corporation." Ill. Rev. Stat. 1981, ch. 48, par. 316.

Pursuant to these provisions, contributions were made on behalf of the plaintiffs during the periods when they were employed. When the plaintiffs were laid off, they applied for the unemployment benefits which the

Act makes available to an "unemployed individual" whose employer has made contributions to the fund for him. An employee is "deemed unemployed in any week with respect to which no wages are payable to him and during which he performs no services ***." (Ill. Rev. Stat. 1981, ch. 48, par. 349.) Further, the Act's declaration of public policy makes it clear that the compulsory unemployment insurance program established is for the benefit of those *involuntarily* unemployed. Ill. Rev. Stat. 1981, ch. 48, par. 300; *Mohler v. Department of Labor* (1951), 409 Ill. 79, 86; *Grobe v. Board of Review* (1951), 409 Ill. 576, 582.

The Department contends that the plaintiffs' ability to control their own employment requires a finding that they are not unemployed individuals within the meaning of the Act. This position, however, is based on the tenuous theory that, as corporate officers, the plaintiffs were in a position to continue rendering valuable services to the corporations. Yet, with the exception of the bid accepted by plaintiff Garland, the record is devoid of evidence which would demonstrate that the plaintiffs performed any services on behalf of their respective businesses during the relevant periods. Clearly, their unemployment was a result of the seasonal nature of the construction business rather than the affirmative action of the plaintiffs.

Adherence to the Department's construction of the Act would result in a *per se* rule wherein officer claimants, such as the plaintiffs, would be unable to realize the benefits of the Act although their corporate employers would be compelled to contribute to the fund. In support of this outcome, the Department urges that the enforced contributions made under the Act should be recognized as a tax rather than an insurance program. We reject this argument. The contributions made pursuant to the Act are paid into the unemployment trust fund "separate and apart from all public moneys or funds of this state." (Ill. Rev.

Stat. 1981, ch. 48, par. 660.) This court has consistently found that these contributions are not general taxes. (*Barco Manufacturing Co. v. Wright* (1956), 10 Ill. 2d 157, 161; *Zehender & Factor, Inc. v. Murphy* (1944), 386 Ill. 258, 263; *Lindley v. Murphy* (1944), 387 Ill. 506, 511.) As the court in *Zehender & Factor* stated, "[T]he amounts required to be paid do not come within the classification of general taxation *** and [the Act] is entitled to liberal construction to the end that its purposes may be met." 386 Ill. 258, 263.

The Department cites to cases of other jurisdictions which have disallowed unemployment benefits to corporate officers and self-employed individuals as persuasive authority for their position. (See, *e.g., Bryant v. Labor and Industrial Relations Commission* (Mo. App. 1980), 608 S.W.2d 524; *Pedalino v. Board of Review* (1964), 83 N.J. Super. 449, 200 A.2d 351; *De Priest v. Unemployment Compensation Board of Review* (1961), 196 Pa. Super. 612, 177 A.2d 20; *DeVivo v. Levine* (1976), 377 N.Y.S.2d 309, 51 A.D.2d 619.) We find these cases factually dissimilar and based on unemployment legislation which views contributions as taxes. Cases of other jurisdictions, which have allowed unemployment benefits to corporate officers, involve employment situations similar to those in the instant case. (See, *e.g., Springer v. Daniels* (1981), 1 Ark. App. 103, 613 S.W.2d 121; *Rector v. Director of Department of Employment Security* (1978), 120 R.I. 802, 390 A.2d 370; *In re Archer* (1975), 133 Vt. 279, 336 A.2d 172; *Eytchison v. Employment Security Agency* (1956), 77 Idaho 448, 294 P.2d 593.) Thus, we find them more persuasive.

The Department contends that disallowing benefits to claimants such as the plaintiffs will "prevent such business owners and operators from manipulating their own employment status in order to subsidize the family (corporate) income with unemployment benefits." Both appellate decisions considered this argument and concluded that the po-

tential for abuse can only be eliminated by legislative action. We agree. "It is not within the province of an administrative agency or court to take from or enlarge the meaning of a statute by reading into it language which will, in the opinion of either, correct any supposed omission or defects." *American Steel Foundries v. Gordon* (1949), 404 Ill. 174, 180-81.

Agency findings and conclusions on questions of fact are "held to be prima facie true and correct." (Ill. Rev. Stat. 1981, ch. 110, par. 274.) This court has interpreted this provision as " 'limit[ing] the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence.' " (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 76.) The Department's findings, which concluded that the plaintiffs were not unemployed individuals, are not supported by the evidence but rather are supplied by implication. Based on the record before us, therefore, and for the reasons stated herein, we find the Department's findings and conclusions to be against the manifest weight of the evidence. Accordingly, we affirm the judgments of the appellate court.

*Judgments affirmed.*

JUSTICE UNDERWOOD, concurring:

While I concur in the opinion of the court, I feel compelled to express my frustration at the result which we are required to reach.

The plaintiffs, in the context of the facts here presented, are "unemployed individuals" entitled to benefits under the statutory scheme as it now stands. Employers are required to make contributions with respect to wages paid to corporate officers just as they are with respect to wages paid to other employees. There are simply no statutory provisions which can reasonably be construed as authorizing the Department to deny benefits to an otherwise

eligible claimant merely because the claimant is an officer of a corporation. To the contrary, if, as the statute provides, wages paid to an officer-employee require corresponding contributions, logic dictates that such individuals should be entitled to unemployment benefits when the statutory conditions have been satisfied. Consequently, I am constrained to agree that this court has no alternative under the facts here presented to affirmance of the judgments of the appellate court granting unemployment benefits to the plaintiffs.

My frustration with this result arises from the fact that, as the Department points out, the unemployment compensation system in its existing form is subject to manipulation and abuse by unscrupulous corporate owners and officers. While there is no evidence in this record to support the contention that either plaintiff here was "conveniently unemployed" in order to receive benefits under the Act, its provisions certainly present tempting opportunities to those so inclined. So long as the legislature requires contributions on wages paid to officer-employees, those opportunities will exist.

The legislature clearly intended the Unemployment Insurance Act to safeguard unfortunate individuals from "economic insecurity due to involuntary unemployment" (Ill. Rev. Stat. 1981, ch. 48, par. 300). The Act was not intended as a means of supplementing the income of corporate stockholders and officers in the form of unemployment benefits.

In short, I agree that the judgments of the appellate court must be affirmed, but I urge that the General Assembly reconsider the provisions of the Act as they pertain to assessments upon salaries of officer-employees in light of the potential for abuse which I believe to be present.

CHIEF JUSTICE RYAN joins in this concurrence.